JACOB F. CAKE, JESSE BOULDEN and THOMPSON NEWKIRK trading in the name and style of CAKE, BOULDEN & Co. v. ABRAHAM CANNON ET AL.

A sheriff is bound to exercise due diligence in executing all writs coming into his hands, and to levy a *fi. fa.* within a reasonable time after he receives it, if he can find goods of the defendant within his bailiwick subject to be taken in execution under it; and to make proper inquiry and effort to discover such goods, and to exercise due care and diligence, discernment and discretion when counter claims, particularly of a false, fraudulent, or suspicious character, are set up to them by another to prevent his levying upon them; and these rules apply as well when the execution of the writ is deputed to another, as when it is in the hands of the sheriff himself.

Every *fi. fa.* should be levied within sixty days at least, because if levied in that time, the lien of it attaches to the goods of the defendant from the moment it is delivered to the sheriff.

But without any intimation from the plaintiff in the writ or his counsel that prompt attention in the levying of it is important or advisable, the sheriff is only bound to exercise ordinary diligence in the matter, and may levy it at any time within the sixty days after it is delivered to him.

If in an action for a false return of *nulla bona* to such a writ against a sheriff and his sureties, it appears that the counsel for the plaintiff was informed by the sheriff thirty days after he had received it, that the defendant had sold all his goods and had none to be levied on to which he simply replied "look again," which he did, and after doing so, again informed him that he had none, to which he made no reply, but afterward on the return of the writ applied at the next term of the court and obtained leave for the sheriff to amend his return of *nulla bona* thereon by adding the words, "and levied on lands and tenements as per description annexed," the plaintiff will not be thereby estopped or precluded from impeaching the truth and validity of the return so made to the writ.

But if the evidence warranted the jury in believing that the counsel for the plaintiffs in the writ before the return of it, assented to or acquiesced in the returns being so made; or that the sheriff before making it, desired and sought instructions from him to levy on the goods after informing him that the defendant had sold them to another, and he gave him no directions to do so, it would constitute a good defence to the action. For if the sheriff believes from the information he has received and has good grounds to apprehend that the goods in question in such a case were not the property of the defendant in the writ when it came to his hands, he not only has a right to call upon the plaintiffs or their counsel for their directions as to what he shall do under the circumstances, but also to demand indemnity before proceeding to levy upon them.

THIS was an action of debt at the suit of the firm of Cake, Boulden & Co. on his official recognizance as sheriff of the county, against Abraham Cannon and his sureties. The plaintiffs had recovered a judgment in this court against Enoch J. Fleming for $509 35, on which a writ of *fieri facias* had been issued to Cannon as sheriff, to which a return of *nulla bona* had been made by him, and which the plaintiffs alleged and contended was untrue. The action was therefore for a false return made by him to the writ. There were various pleas filed to the declaration in the action, among which the fifth was that the plaintiffs were estopped from alleging that there were then and there such goods and chattels of the said Enoch J. Fleming in the bailiwick of the said sheriff, because the plaintiffs at the return term of the said writ of *fieri facias*, by their counsel, James R. Booth Esquire, moved for and obtained the leave of the court to amend the return of the said writ and which said return was then and

there amended by the said sheriff at the instance of the said plaintiffs by adding thereto the words, " and levied on lands and tenements as per description annexed;" and that the said plaintiffs afterward caused to be issued out of the said court on the said judgment, a certain writ of *venditioni exponas,* to wit, number 98 to the November Term, A. D. 1861, by virtue of which the said sheriff sold the said lands and tenements, and that thereby the said plaintiffs accepted the said return of the said sheriff to said writ of *fieri facias* and admitted the truth of the same as so made by him as aforesaid : whilst the sixth plea was as follows, that by the acceptance of the said return to the said execution and by the subsequent proceedings thereon as in the last plea mentioned, the said plaintiffs waived all claims or proceedings against the said sheriff for or on account of the same. The seventh plea was that the sheriff had used and exercised all due and reasonable care and diligence in searching for goods and chattels of the said defendant in the said writ of *fi. fa.* and could find none. Issue had been joined upon these and the other pleas.

The plaintiffs proved that the writ in question was issued and went into the hands of the sheriff on the 30th of June, 1860, and at that time Fleming, the defendant in it, was in possession of personal property at his farm in Appoquinimink Hundred, consisting of horses, cattle, wagons, farming utensils, household furniture and a crop of corn growing on it, to the value of six or seven hundred dollars.

The defendants proved by the deputy of the sheriff for the hundred, that the writ was put in his hands for execution the last of July or the first of August following, and that he went as soon as he received it, to the defendant's house on his farm to levy upon his property, but when he informed him of it, he replied that he was too late, for he had sold all his personal property to Augustine Mailley, who was then there, and as he knew both of them to be upright and honest men and had never

known Fleming to act fraudulently in any transaction, he made no further inquiry about his property, but informed the sheriff of what he had here stated and returned the writ to him; and that Mailley at that time claimed to own all the personal property there. That Fleming also told him at the same time that he had sold his land, but would not tell him to whom he had sold it. The defendants further proved that four or five weeks before the return of the writ the sheriff had notified the counsel of the plaintiffs of the information which he had received from his deputy that Fleming had sold all his personal property and had no goods, when he directed him to tell the deputy to look again, which he did, and received a further reply from him that there were none, and when the counsel was afterward informed by the sheriff of his deputy's second report that there were no goods, he expressed surprise that the writ had not been levied on the lands of the defendant, and that it was at his instance that the writ was so amended after the return of it. The rough docket of the Prothonotary at the return term of the writ containing an entry made by him of a motion made by the counsel of the plaintiffs for the leave of the court to amend his return upon it, was also in evidence, by which it appeared that leave was granted to amend by adding, " and levied on lands, " and which was accordingly done by him.

*Booth*, for the plaintiffs : The execution in question bound the goods of the defendant in it, or would have bound them from the time it came to the hands of the sheriff, on the 30th of June, 1860, had that officer discharged his duty, as he should have done, and levied upon them within sixty days thereafter, even if the pretended sale of them to Mailley had been a genuine, instead of a sham and spurious sale, as the evidence had clearly shown that it was, because it was not made, or concocted until after the writ had come to the sheriff's hands. Nothing, however, it appeared from the evidence, was done by him

with the writ until the last of July or the first of August, when it was sent to his deputy for that hundred, who soon after called on the defendant at his house for the purpose as it was said, of levying on his goods and was coolly informed by him that he was too late, that he had just sold all his personal property to Mr. Augustine Mailley, and when modestly asked about his lands, as coolly informed him that he had sold them too, although he would not condescend to give him even as much as the name of the purchaser of them; and the deputy it seemed quite as coolly acquiesced in these improbable statements, and neither made any further inquiry on the subject, nor any levy, but sent word to the sheriff that the defendant had sold all his property, that there were no goods to be levied on, and thereupon the execution was returned *nulla bona*. But this was gross negligence in the sheriff and his deputy and unquestionably rendered him liable to the plaintiffs for the value of the goods to the extent of the sum commanded to be levied by him, in the present action. The defence to all that, however, was that the plaintiffs were estopped and debarred from recovering in it by reason of the direction afterward given by their counsel to have it levied on the lands of the defendant and the motion and application still more recently made by him for the leave of the court to the sheriff to so amend his return to the writ. But a plaintiff neither forfeits, nor waives his right of action against the sheriff for a false return, even by accepting money from him under it, and *a fortiori*, he can not lose, forfeit, or waive it, by simply assenting to, or applying on his behalf, as a friend, through his counsel, or it might be the counsel of the sheriff also *pro hac vice*, for the leave of the court to amend his return merely to such a writ. *Sewell's Law of Sheriff* 46, *Law Libr.* 327. It was once held that if after such an officer had made a return to a writ of *fieri facias* for three hundred and one pounds, that he had levied on goods to the value of thirteen pounds only, and the plaintiff accepted and received the latter amount from him under the writ, he could not

afterward maintain an action against such officer for a false return to such writ. *Beynon v. Garratt et al.*, 11 *E. C. L. R.* 351. But that case had been distinctly overruled, for it had since been decided that when a sheriff had returned to a writ of *fi. fa.* that he had levied a part of the debt and that the defendant had no goods whereof the residue of it could be levied, and the creditor accepted the amount levied on account and toward payment of the debt, he was not thereby precluded from bringing an action against the sheriff for a false return to such *fi. fa.*—*Holmes v. Clifton*, 37 *E. C. L. R.* 206. If in such a case the right of action for a false return was not waived or estopped by such an acquiescence in a false return of the sheriff, what reason, or pretext could there be for holding that the right of action for such gross misconduct and such a false return as had been shown in the present case, was waived or lost by reason of anything alleged in the fifth and sixth pleas of the defendants?

*Rodney*, for the defendants: If the plaintiffs by and through their attorney did not mean to admit, sanction, concur, or acquiesce in the return of the sheriff as it was first made to the court in this case, why should they through their attorney apply to the court for leave to the sheriff to amend his return of no goods by simply adding " and lands and tenements levied on as per description annexed?" And furthermore if they did not mean to assent and submit to that return of no goods as true and undeniable, why should they after it had been so amended, proceed as had been shown in the case, to sue out a further writ, a writ of *venditioni exponas* to sell the lands and tenements, and go so far as to actually advertise them for sale, as appears from the return to the latter writ, which was " lands advertised and remain unsold for want of bidders?" This he should contend with great confidence constituted both in fact and in law a waiver of any right of action on the part of the plaintiffs against the sheriff for a false return upon the writ. Upon the facts

proved and under the pleas referred to by the counsel for the plaintiffs he should insist that they constitute a waiver of any right of action which they might have had, if they ever had any, against the sheriff for a false return to it. He would cite, however, but one authority on the point. In the case to which he was about to refer, the question before the jury was, did the sheriff make a false return to the writ, contrary to the duty of his office, in regard to which the court in their instructions to them said, if he made the return in question with the consent and approbation of the plaintiff in the action, whether it was true or false, it could not sustain an action to repay him in damages for any loss it might have occasioned him, on the ground that the return was false. He was estopped from setting up the fact, *volenti non fit injuria*. If there was any testimony before the jury from which they might infer the fact that the plaintiff did consent that the sheriff should make the return which he did make, then no action could be maintained upon it for a false return. *Hayes v. Lusby*, 5 *Harr. & Johns. Rep.* 485.

But it was further proved that the sheriff, as soon as he received the intelligence from his deputy that Fleming had no goods, informed the counsel of the plaintiffs of the fact, and was instructed by him to tell the deputy to make a further search, or to look again for goods of his, which he did and soon after received a similar reply from him, which he also immediately communicated to the counsel, but received no further directions or information from him in regard to the matter, although there was yet a month to six weeks remaining for the return of the writ, which was ample notice twice deliberately given by the sheriff to the counsel of the plaintiffs that the defendant had no goods, and which was equivalent to saying to him, and was evidently so intended by the sheriff, if he had any, it had then become the duty of the plaintiffs in the writ, to point them out to him, or at all events to give him express instructions and directions where he could find them, or it would become his duty to return it, as he

did afterward return it in the absence of any such instructions or directions, *nulla bona*. It was therefore tantamount to a formal admonition, which he had a perfect right to give to the counsel of the plaintiffs under the circumstances, that unless he pointed out specific goods of the defendant which he could safely levy on as his property, and would indemnify him against any loss in doing so in case they should turn out not to be his property, then he would be under the necessity of returning the writ *nulla bona*. For such was the obligation which the law imposed upon the plaintiff in an execution when he was thus forewarned and admonished by the sheriff. And the fact that the counsel for the plaintiffs did nothing and said nothing further about the matter, but quietly and tacitly submitted to the step which the sheriff was thus obliged to take in regard to it, until the term rolled round for the return of the writ, and then without complaining of any falsity in it, applied to the court for leave to that officer simply to amend and perfect it according to law and the facts in the case, which it clearly implied, certainly afforded a strong and conclusive presumption that he expected and desired during the whole of that interval, nothing more of the sheriff than just such a return as was finally made by the leave of the court to the writ, and which, of course, fully warranted the sheriff in the conclusion that he was satisfied that the defendant had no goods liable in law to be levied on, and that he was therefore perfectly content so far as the goods in question were concerned, that the return of the writ should be *nulla bona*.

As to the duty of the sheriff under the laws of this State, he knew of no case or principle ruled which recognized it as either the duty, or the right of a sheriff to determine a controverted question of property between conflicting claimants to goods on which he is expected, or directed to levy. He may demand and require indemnity from the plaintiff before he proceeds to seize the goods in question; but he has no authority or power and

is not bound to determine the matter involved, or to incur the responsibility of proceeding to levy in such a case without security.

*Booth* replied, reiterating the argument and relying on the points made and the authorities cited by him in his opening.

*The Court, Gilpin, C. J.,* charged the jury that a sheriff must exercise due diligence in executing such a writ, as well as every other writ coming to his hands, and must levy it within a reasonable time after he receives it, if he can find within his county goods of the defendant subject to be seized and taken in execution on such a writ; and is bound by virtue of the legal obligation of his office, to make proper efforts to find such goods and to exercise due care and diligence in the discovery of them and also proper discernment, consideration and judgment when counter claims, particularly of a false, fraudulent, or suspicious character, are set up by others to the goods for the purpose of preventing a levy on the property, or the sale of it on the execution.   And these rules apply as well to any deputy he may appoint to execute the writ for him, as to the sheriff himself when executing it in person; for what is done by his deputy in such a case, is in contemplation of law done by the sheriff himself, and he is consequently just as liable for it in the one case as in the other. But what will constitute a reasonable time within which such a writ should be levied, or due care and diligence in discovering goods of the defendant or proper discrimination, reflection and judgment on his part when false, fraudulent or pretended claims are made to the property by others for the purpose of preventing a levy upon them, or the sale of them under the writ, were all questions of fact for the consideration and determination of the jury after carefully considering all the evidence they have heard in regard to the matter.

There was one rule of law, however, which rendered it proper and necessary that every writ like the one in question, should be levied within sixty days after it reaches the hands of the sheriff, and it was that which provides that the lien of the writ shall attach to and bind all the goods of the defendant liable to be seized and taken in execution under it, from the time it comes to the sheriff's hands, provided it is levied upon them within sixty days thereafter; for without a levy upon them within that time, if they should be sold, or seized in execution in the meantime, under a subsequent writ, the security and advantage of such a lien would be lost. In the case before the court the writ in question came to the hands of the sheriff on the 30th day of June, 1860, and it appeared from the testimony of both of his deputies who were examined in regard to it, that it was sent in the latter part of July or in the first part of August following, to his deputy who resided in the same hundred in which the defendant lived, to be levied on his property there, and it also appeared by his testimony that he at once proceeded to the defendant's farm for that purpose, but when he informed him of the object of his visit, he replied that he was too late, that he had sold all his personal property to Mr. Augustine Mailley, and according to the deputy's own statement, relying upon this declaration of the defendant, and the good opinion which he had of the character and probity of both Fleming and Mailley, he made no levy upon the goods in question, but soon after reported to the sheriff that the defendant had sold all his personal property to Mailley and had no goods to be levied on. It was also in proof that the sheriff informed the counsel of the plaintiffs of this fact, and was instructed by him to tell his deputy to look again, which he did, and received from him a second time the information that the defendant had no goods, which he also communicated to the counsel of the plaintiffs, without receiving, so far as the evidence discloses the facts of the case, any further instructions or directions from him in regard to the matter; and the

next we hear of it, the writ was returned at the ensuing November Term of the court, with the simple return of *nulla bona* endorsed thereon by the sheriff. It consequently appeared that from the time it had come to his hands until the return of it, he had over four months to levy and collect the debt upon it, and in about thirty days after he received it, he sent it to his deputy to have it levied. There was no intimation, or allegation, however, that this step was not taken by him within a reasonable time under all the facts and circumstances proved in the case.

Indeed, there could not have been any well founded objection taken to his proceedings on that ground simply, for without any intimation, or admonition, from the plaintiffs or their counsel, that promptitude and despatch was essential or important in the levying of the execution, and in the absence of any instructions from them on the subject, or of ground made known to the sheriff of loss or danger likely to result from delay, he was only bound to exercise ordinary diligence in the matter and might levy the writ at any time within the period prescribed by law.

But that was not a material inquiry or question presented in the case now before the court. For it was an action simply for an alleged false return of the writ by the sheriff, and not for failing to levy it within a reasonable time, and the gist of it as thus alleged, was that the sheriff had falsely returned that there were no goods of the defendant within his bailiwick, that is to say within his county, liable to be seized and taken in execution under it, whereas the plaintiffs contend that the goods in question, were then and there the proper goods of the defendant and that it was the duty of the sheriff to levy the writ upon them, and by reason of his failure to do it, they have sustained loss and damage to the amount of the debt, interest and costs embraced in it; and this was also purely a question of fact for the consideration and decision of the jury. They had heard the testimony of Mailley, as well as that of the other witnesses. Whether

he was a *bona fide* purchaser and the actual owner of the goods in question, and if so when he actually became such purchaser and owner of them—whether before, or after the writ went into the hands of the sheriff, or whether in point of fact, it was but a pretence and pretext got up between him and Fleming for the purpose of preventing the seizure and sale of them under the writ, and whether Fleming, the defendant in it, was not all the while the real and rightful owner of them, were the questions here involved and which they were to determine and decide from all the testimony which they had heard on the subject and from all the facts and circumstances which had been given in evidence when taken and considered in connection with it. If Mailley had in point of fact become the *bona fide* purchaser of them for a good and sufficient consideration from Fleming, and was the real and rightful owner of them and was in the actual possession of them, before the writ went into the hands of the sheriff, and they should be satisfied that such was the case, the plaintiffs could have no right to recover in the action and the verdict should be for the defendants. But if on the contrary, they should be satisfied that Mailley had not thus become the purchaser, owner and possessor of them before the writ went into the hands of the sheriff, then it would become material and necessary for them to consider and determine whether the sheriff was warranted and justified by reason of anything which had been proved in the case, in omitting to levy upon the goods in question as the property of the defendant in the writ, and in making his return to it that he had no goods to be levied on under it. And this brings up a question of law as to what is the legal duty of the sheriff under such facts and circumstances as have been shown and proved in the present case, as to which it becomes our duty to give you the proper instructions for your guidance in the solution of the question of fact which depends upon it.

We have before briefly adverted to the evidence and shall only recur to such portions of it again, as may be

necessary to present the matter properly to your apprehension in the application of it. The counsel for the defendants contends that by reason of the information which it was proved the sheriff had on two different occasions given to Mr. Booth, the counsel for the plaintiffs in the writ and also in this action, before the return of the writ, that the defendant in it had no goods which he could levy it upon, and received no instructions or directions from him to levy on the goods in question, or where other goods of his could be found to levy on, except on the first occasion when he merely told him to tell his deputy to look again for them, and also by reason of the motion and application afterward made by him at the November Term of the court for leave to amend the return then made by the sheriff to the writ, which was simply *nulla bona*, by adding to it, " and lands levied on as per description annexed," that the plaintiffs in the present action are estopped and precluded from contradicting or denying the truth of the return as then made, or from alleging or asserting that the goods in question were in fact the property of the defendant in the writ, and should have been levied on as such. We are not prepared to say, for we do not think, if the plaintiffs, instead of traversing, had demurred to the pleas which set up this defence, and had thus brought the matter directly before the court alone for its decision, that it would have constituted in law an estoppel to the action. He, however, had not done that, but had denied the truth of the pleas or the facts alleged in them and had traversed them and taken issue upon them, and they were accordingly now before the jury to be considered and determined like any other fact alleged and denied in the pleadings and must be decided by them according to the weight of evidence which had been adduced for or against them. The counsel for the defendants has also contended before the court and jury that these several acts on the part of the counsel for the plaintiffs taken together constitute such a clear and unquestionable admission and acknowledgment on his part of the

truth of the return as then made to the writ, and such a tacit submission to and acquiescence in it on his and their part, that it is not competent for the plaintiffs, and they consequently cannot now be permitted, to dispute or deny it. But neither are we prepared to go so far as to give our assent to the proposition as thus stated by him. We will, however, say to you on this subject, that if the jury are satisfied from the evidence before them that the counsel for the plaintiffs in the writ at any time before the return of it, assented to, or acquiesced in the returns being so made, or if they are warranted in believing from all the evidence they have before them on the subject, that when the sheriff informed the counsel for the plaintiffs of the report which he had received from his deputy in regard to the goods in question, he sought and desired instructions or directions from the counsel to levy upon them, and he gave him no instructions or directions to do so, then we think the plaintiffs are not entitled to recover in the action, and the verdict should be for the defendants. For if the jury were satisfied from the evidence that the sheriff believed from the information which he had received, and had good grounds to apprehend that the goods in question were not the property of the defendant in the writ when it came to his hands, he not only had a right to call on the plaintiffs or their counsel for instructions as to what he should do under the circumstances, but even to demand indemnity from the plaintiffs before proceeding to levy upon the goods in obedience to their instructions.

The defendants had a verdict.